IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARI G., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-24-1178-SM |
| | ) |
| FRANK BISIGNANO, | ) |
| COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Cari G.[1] (Plaintiff), seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to proceed before the undersigned for disposition. Docs. 8, 9[2]; *see* 28 U.S.C. § 636(c).

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing that the Administrative Law Judge (ALJ) overlooked Plaintiff's overactive bladder at step two, resulting in step four and step five error. Doc. 14, at 2-16; Doc. 21, at 1-4.

---

[1]     The Court refers to Plaintiff by first name and last initial only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

After careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court concludes any step-two error was harmless, did not result in later error, and affirms the Commissioner's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## I.   Administrative determination.

### A.   Disability standard.

Plaintiff applied for disability benefits and supplemental security income under the Social Security Act. AR 14; *see* 42 U.S.C. §§ 401, *et seq.*, 1381, *et seq.*

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in [her] prior work

activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform" a different type of work and that such a "specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

### C. Relevant findings.

#### 1. The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-34; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since December 23, 2021, the alleged onset date;

(2) has the severe medically determinable impairments of osteoarthrosis and allied disorders, disorders of the skeletal spine, and obesity;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[3] (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following exceptions: she can occasionally balance, stoop,

---

[3] "[R]esidual functional capacity is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

        kneel, crouch, crawl and climb ramps and stairs and never climb ladders, ropes, or scaffolds; and she requires a sit/stand option for five minutes without leaving the workstation one time per hour;

(5)   could perform the past relevant work as a bank teller, account clerk, and secretary;

(6)   had not been under a disability from December 23, 2021, through March 21, 2024.

AR 17-34.

### 2. The Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see* 20 C.F.R. § 404.981.

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

4

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005))); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). This Court "consider[s] whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett,* 395

F.3d at 1172). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B. The ALJ's consideration of Plaintiff's overactive bladder.

#### 1. The ALJ committed step two error.

Plaintiff contends the ALJ failed to identify her overactive bladder as either a severe or a non-severe impairment or as a medically determinable impairment at step two. Doc. 14, at 2. She maintains this error tainted the ALJ's step four analysis (and any step five analysis that would follow). *Id.* at 10-17. As Plaintiff seems to recognize, because the ALJ did find that Plaintiff had other severe impairments at step two, that any failure to find her overactive bladder severe at step two could result in harmless error if the ALJ adequately considered the effect of this impairment and accounted for them in formulating her RFC at step four. Doc. 21, at 3; *see* Doc. 14, at 15; *see, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs.

Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523)); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis.").

Plaintiff also acknowledges that the ALJ discussed the records involving her overactive bladder at step four, but never made a determination whether this condition was a medically determinable severe or non-severe impairment. Doc. 14, at 12. The Commissioner argues that Plaintiff's "argument fails because the ALJ did not decide this case at step two" and did consider Plaintiff's bladder issues in formulating the RFC. Doc. 18, at 1, 5.

At step two, the ALJ found three severe impairments (osteoarthrosis and allied disorders, disorders of the skeletal spine, and obesity), and the following non-severe impairments: obesity[4], sleep apnea, embolism, and a

---

[4]  The undersigned concludes the inclusion of obesity as both severe and non-severe impairments to be scrivener's error.

history of right knee surgery. AR 16. She did not refer to Plaintiff's overactive bladder at step two.

### 2. The ALJ's consideration of the evidence at step four made the step-two error harmless.

At step four, the ALJ summarized much of Plaintiff's testimony and the medical evidence, which included consideration of her overactive bladder and the treatment Plaintiff received for it, and her subjective statements about that condition. *Id.* at 23-29.

If Plaintiff has any severe impairment at step two, the ALJ at step four must consider all her impairments, severe and non-severe, in assessing her RFC. *See Hill,* 289 Fed. App'x at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e. g., laboratory findings) and nonmedical evidence (e. g., daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC

8

determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citation omitted).

The ALJ considered Plaintiff's medical record relating to her bladder conditions as follows:

- AR 22 (noting the Dec. 16, 2021 surgical insertion of a bladder neurostimulator);

- *id.* (Dec. 30, 2021 follow-up where Plaintiff noted her recent knee injury hindered her ability to get to the restroom on time);

- *id.* at 23 (Feb. 1, 2022 Plaintiff complained of overactive bladder issues, which had not improved since the stimulator's placement and she had abnormal right knee swelling);

- *id.* at 25 (Nov. 4, 2022 complaint of pain in right hip and leg that Plaintiff thought might be connected to the stimulator's placement; lumbar and hip x-rays were ordered and Plaintiff discharged in stable condition);

- *id.* at 26-27 (Feb. 1, 2023 Plaintiff's complaint was chiefly a sore throat, but her problem list included (among several other conditions) an overactive bladder and the "copious number of issues . . . in the [Plaintiff's] problem list were not supported by . . .

9

actual objective exam findings" and the only acute objective symptom was tachycardia);

- *id.* at 29 (May 24, 2023 overactive bladder and constipation complaints and Plaintiff received a prescription for Vesicare; Miralax was recommended as well as increased fiber and water intake (during this visit she reported she has not worn Depends in six months and was "very happy with the medtronic device," *id.* at 1418), and that she would contact Medtronic for "advice on settings," and that she would have a "trial off of Vesicare" due to side effects, *id.* at 1423); and

- *id.* at 29-30 (July 12, 2023 visit for monitoring of her overactive bladder and Plaintiff reported she stopped taking Vesicare because of "bothersome side effects," and was not taking Miralax or a similar product; was having urinary leakage issues, *id.* at 1554, and she reported "UUI requiring depends daily," *id.,* which the ALJ believed was "urge urinary incontinence," *id.* at 29; no plan of care changed; but the record also shows that she agreed to change her stimulator settings to the previous settings as her "symptoms were managed better at that setting," and that she understands how to adjust the programming; *id.* at 1558).

10

At the hearing, the ALJ and counsel also asked about the neurostimulator and Plaintiff's bladder issues. *Id.* at 49-51. Plaintiff stated she's used Depends for two years and the stimulator was not helping because its battery requires regulation, and her knee injuries have complicated this regulation. *Id.*

In response to questions from counsel, Plaintiff stated the stimulator worked "perfect" during the first week, before her knee injury. *Id.* at 69. To get the battery regulated, Plaintiff testified she needs to call someone at Medtronic who could assist her. *Id.* at 70.

In formulating the RFC, the ALJ also considered Plaintiff's testimony and reports about her activities of daily living, which include driving regularly, attending church regularly, managing her own appointments, living with her stepdaughter and five minor grandchildren, helping the children get ready for school, using social media, shopping and banking online, performing basic household chores, reading the bible, watching television videos on her phone, preparing simple meals, managing her medication schedule (with alarms), watching television, socializing with others in person and over the phone, playing with her grandchildren, and getting along with others without problems. *Id.* at 17, 18, 30.

11

In her final hypothetical question to the vocational expert, the ALJ included four unscheduled ten-minute breaks. *Id.* at 73. The vocational expert acknowledged the DICOT does not address this "at all." *Id.* She testified that in "looking at how work is performed," the more highly skilled the job level is, and the more flexibility one has, as long as the job gets done. *Id.* Plaintiff's past relevant work position each has a specific vocational preparation (SVP) level of 5. *Id.* at 32. That said, the VE testified that productivity would lag, there might be reprimands, and "sustaining employment would be problematic." *Id.* at 73-74.

As the Commissioner points out, Plaintiff testified she would require three bathroom breaks during an eight-hour day, which also tracks the medical record. Doc. 18, at 9 (citing AR 51, 1418). Given that the customary work day permits breaks approximately every two hours, and noting her skilled (and arguably more flexible) work, the undersigned concludes that the ALJ did not omit the bladder impairment from her analysis in formulating the RFC. *Hill*, 289 F. App'x at 292.

Plaintiff argues the ALJ did not consider her overactive bladder nor did she consider this condition aggregated with her back and knee impairments. Doc. 14, at 15. And she raises a similar argument about the added impact of her obesity. *Id.*; Doc. 21, at 2. She maintains the Commissioner raises only

post-hoc rationalizations and this Court cannot engage in a meaningful review of the decision, given the ALJ's failure to identify Plaintiff's overactive bladder as an impairment. Doc. 14, at 15-16; Doc. 21, at 3. The undersigned disagrees.

Here, the ALJ did not ignore Plaintiff's overactive bladder, her obesity, her knee injuries and pain, or the combined effects of her severe and non-severe impairments in formulating the RFC. He considered her medical history in detail from December 2021 through October 2023. AR 22-30. He discredited her consistency, citing activities of daily living, *id.* at 17, 18, 30, and objective exam findings, *id.* at 26 (noting the "disconnect between [Plaintiff's] complaints and her actual objectively abnormal physical or mental status exam findings"), 27. The ALJ accounted for all of Plaintiff's impairments in formulating the sedentary RFC that included additional restrictions. *Compare Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is [the] guide.") *with Bradley v. Colvin*, 643 Fed. App'x. 674, 676 (10th Cir. 2016) (affirming an ALJ's failure to discuss a non-severe impairment at step four where "the ALJ discussed Bradley's hand impairments in detail at the second step in the analysis.").

The ALJ clearly articulated her evaluation of Plaintiff's symptoms under SSR 16-3p. Substantial evidence supports the ALJ's decision.

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 1st day of August, 2025.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE